Filed 8/3/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H040926 |
| Plaintiff and Respondent, | (Monterey County Super. Ct. No. SS132170) |
| v. | |
| RYAN JHONG FROMUTH, | |
| Defendant and Appellant. | |

Defendant Ryan Jhong Fromuth was convicted by jury trial of violating Penal Code section 288.4, subdivision (b).[1] Section 288.4 provides: "Every person who, motivated by an unnatural or abnormal sexual interest in children, arranges a meeting with a minor or a person he or she believes to be a minor for the purpose of . . . engaging in lewd or lascivious behavior" and "who goes to the arranged meeting place at or about the arranged time" commits a felony. (§ 288.4.) Defendant was granted probation.

On appeal, he makes two related contentions premised on his assertion that the "motivated by" element of the offense requires that the motivation be a "substantial factor" in the commission of the proscribed conduct. He asserts that the jury's verdict is not supported by substantial evidence that the required motivation was a substantial factor and that the trial court prejudicially erred in failing to give a "substantial factor" instruction. Defendant also contends that the trial court prejudicially erred in refusing to

---

[1] Subsequent statutory references are to the Penal Code unless otherwise specified.

instruct on entrapment, that his trial counsel was prejudicially deficient in failing to object to the court's imposition of probation services fees in the absence of evidence of his ability to pay those fees, and that the court imposed a section 290.3 fine in a statutorily unauthorized amount.

While we agree with defendant that the "motivated by" element requires proof that the motivation was a substantial factor in the commission of the prohibited conduct, we find substantial evidence to support the jury's verdict and conclude that the trial court did not have a sua sponte duty to give a substantial factor instruction. We also conclude that the court was not obligated to instruct on entrapment and that defendant's trial counsel was not deficient in failing to object to the imposition of probation supervision fees. However, we find that the trial court failed to comply with its duty to specify the statutory bases for its imposition of a $1,610 section 290.3 fine, and we remand for the court to fulfill its duty.

## I. Factual Background

In October 2013, Sergeant Brian Hoskins of the Monterey County Sheriff's Department began an investigation into predators on Craigslist. As one part of his investigation, he posted an advertisement on Craigslist. He posted the advertisement in the "casual hookup/NSA" part of the "personal/romance" portion of the "casual encounters" section of Craigslist. "NSA" stands for "No strings attached." This section is "known to be the section for people looking for . . . casual sex." Craigslist permits a person posting an advertisement in this section to specify gender and "what you're looking for," and "[t]here's a box for your age . . . ." Craigslist prominently states that "'by posting here you confirm you're 18 or older.'"

Hoskins's advertisement, which was posted at 2:19 p.m. on October 26, 2013, was headed: "Young cutie looking for a hookup today!!! - w4m (Salinas)." The "w4m" signified a woman seeking a man. The text read: "Hi, I am young and cute looking to

2

hookup with someone today.  This is for today only and probably will be a onetime thing.  Yes I do have a bf, so this has to be on the way DL.  I am drama free and clean and you need to be to.  I promise you wont be disappointed with my looks.  I am latina 5'6, 115 pound with brown hair past my shoulders and brown eyes.  I am looking to do this today, so only send me a message if you can meet today.  I am very real.  Put 'today' in the subject line and send me a pic.  I I liked what I see I will respond."  Hoskins left the age box blank.  He did this because he knew that an advertisement stating an age under 18 would be removed from Craigslist.  Hoskins left his advertisement up for an hour to an hour and a half, and he received over 300 responses.

At 2:56 p.m., defendant, who was 30 years old, responded to the advertisement.  He provided a photo (showing him fully clothed) and said:  "Hi there.  There's my picture.  I'm 6'0, 160lbs, half asian.  Anyway, good luck with your hook up.  Oh and I'm in Salinas and available!"  Hoskins, who was pretending to be "Maria Garcia," responded at 3:05 p.m.  "Hey, you are cute.  Where are you from?  I am 15 and dont drive so you would have to come pick me up let me know if that is going to be a problem.  How old are you?"  Defendant responded five minutes later:  "Thanks.  I'm from Salinas, and I'm much older than 15.  My advice for you hooking up on craigslist is to stop telling people you're 15 because that makes people worry about if you're actually 15 trying to hook up, or police."  Hoskins responded three minutes later:  "I just want to be honest so that no dudes go all crzay on me.  That's all, but ok thank you.  What if someone asks for my id?"  Defendant responded six minutes later:  "People ask for id if you look too young and they check if you're over 18.  There's no reason to ask for ID if you are telling people you're 15.  Maybe there's something else you can do today besides hook up with someone?  You're unhappy with your boyfriend?  Do you have skype or AIM or something?"[2]

---

[2]      "AIM" is AOL instant messaging.

Hoskins ceased communicating with defendant after defendant gave this response because his protocol was to terminate contact if the responder suggested something other than sex. At 3:15 p.m., Hoskins took down the advertisement. Almost an hour later, defendant wrote to "Maria" again: "You deleted your ad so I hope you found your hookup?" Hoskins responded one minute later: "I think I did. But if I didnt, ill message you." Defendant responded six minutes later: "When you delete your ad, pretty soon I don't think it lets us talk anymore. We'll have to share email directly . . . mine it ryan909@gmail.com [¶] Good luck I hope everything goes okay~"

Several hours later, just before 8:00 p.m., Hoskins sent an e-mail to defendant: "So it looks like I got ditched on. Are you still interested?" Defendant responded seven minutes later: "Hi. Did it go badly too? What part of Salinas are you?" Hoskins responded 49 minutes later: "Im in creekbridge. Yes he ditched me. never showed up. Where are you at?" Defendant replied three minutes later: "south salinas. You think you want to see me?" Hoskins responded one minute later: "If you are down and not into games. We both know what this is about." Defendant responded seven minutes later: "So, where are we going? Am I picking you up or am i just visiting you?" Hoskins responded two minutes later: "Well are you down or do you just want to talk?" Defendant responded two minutes later: "I'm down. What's the plan?"

Over the next hour, Hoskins and defendant exchanged a flurry of e-mails. Hoskins told defendant "I don't want to do this in a car in case we get caught." Defendant offered to "get us a room." Hoskins informed defendant: "I am not on bc [birth control] so you would have to bring something to handle that too. I have to know before we meet you are not into weird stuff?" Defendant responded: "I consider this weird actually, because I wouldn't tell people I know that I consider doing this." Hoskins told defendant: "Well I am not very expereinced, so I want to know what you want me to do. But I am good with all the normal stuff. I guess I am trying to say I am scared of anal. You aren't going to try that with me or make me do that right." Defendant asked

4

where he would pick her up, and he reassured her that "[i]f you were uncomfortable with something it would bother me." He also reassured her that he would be "using protection" and was "not here to trick or bother you, but it's good to be cautious!" Hoskins told defendant "I have only been with two guys" and was therefore "nervous." When Hoskins asked "wat motel," defendant replied: "You seem pretty bright, so I hope you appreciate that both of us are facing a risky situation. I can't just be reckless now either. That means I don't want to type any direct answer for that in a message." Hoskins told defendant: "Other than regular and oral you arent expecting anything else right. No crazy stuff. Just fun for us both. There are a lot of creepers out there. But you dont seem like."

Just after 10:00 p.m., as they making final arrangements to meet, defendant asked: "It's not too late for you to go out?" Hoskins responded: "No my mom works nights." Hoskins asked defendant: "I want to know how much you are cuz I am very tight down there and if you are to big it is guna hurt and will you lick me first cuz I have never had a guy do that to me. Or is that something you dont do?" Defendant responded: "Sounds fun. 6" is the average size I am. I can't believe nobody has ever ever licked you." Hoskins responded: "Ok, sounds good . . . . Make sure you have protection I am not on BC." Hoskins expressed concern that defendant's roommates might hear them. Defendant asked "Are you loud?" Hoskins responded: "I am loud if it feels good." Hoskins asked if defendant's "bed make lots of noise when you do it." Defendant assured Hoskins that it was "not too noisy." Hoskins reminded defendant "Dont forget protection." As Hoskins was providing directions to defendant to the location where "Maria" would meet defendant, defendant e-mailed: "This is the riskiest part you know . . . . It's very scary."

When defendant arrived at the designated meeting location, he was arrested. A single condom was found in the center console of his vehicle. Defendant told Hoskins that he was there to meet a girl he had met on Craigslist. Hoskins asked defendant "why

he thought it was a good idea to meet with a 15-year-old girl." Defendant responded "that it wasn't a good idea, that it was a horrible idea. That he had wrecked his life and his family was going to be disappointed in him." Defendant explained to Hoskins that he was "both horny and stressed," "had broken up with his ex-girlfriend several months earlier," and "had issues with impulse control." He also admitted to Hoskins that, "if there would have actually been a 15 year old," he would have had sex with her. Defendant told Hoskins that he "felt this may have been a police sting operation" and "didn't know why he still came." He admitted that he knew that what he had done was wrong. Defendant said that he had brought the condom at the girl's request. He also told Hoskins that he "didn't even actually think that it was possible for a 15 year old to be on Craigslist looking for a hookup."

## II. Procedural Background

Defendant was charged by information with three counts: a violation of section 288.4, subdivision (b); a violation of section 288.3, subdivision (a) (contacting or communicating with a person he believed to be a minor for the purpose of committing a sexual offense); and attempted oral copulation of a person under 16 (§§ 288a, subd. (b)(2), 664). It was further alleged that he had previously suffered a felony conviction for which he had served a prison term (§ 667.5, subd. (b)).[3]

Hoskins was the only prosecution witness at trial. Defendant was the only defense witness. He testified that he did not intend to have sex or engage in any other lewd conduct with a 15-year-old when he arrived at the arranged meeting with "Maria."[4] His trial counsel argued that "the issue in this case is whether or not Mr. Fromuth thought he

---

[3] The prison prior was bifurcated at defendant's request, and he subsequently waived his right to a jury trial on it and admitted it.

[4] He admitted that he had suffered a felony conviction for sale of marijuana eight years earlier.

6

was meeting a 15 year old for sex.  The other elements, quite frankly, aren't really in dispute."  "We posit that he never believed this person to be a minor, that he wasn't intending to go and have sex with a 15-year-old girl."

Defendant was acquitted of the attempted oral copulation count and convicted of the section 288.4 count.  The jury was unable to reach a unanimous verdict on the section 288.3 count.[5]  The court suspended imposition of sentence and placed defendant on probation for three years conditioned on him serving a year in jail.  He was ordered to register as a sex offender for the rest of his life.  The court also ordered defendant to pay a probation services fee of $864 plus $81 per month and a section 290.3 fine of $1,610.  Defendant timely filed a notice of appeal.


### III.  Discussion
### A.  Section 288.4's "Motivated By" Element

The premise for defendant's challenges to the sufficiency of the evidence to support his conviction and to the validity of the court's instructions on the section 288.4 offense is that the "motivated by an unnatural or abnormal sexual interest in children" element of the section 288.4 offense requires that this motivation be a "substantial factor" in the commission of the proscribed conduct.

Section 288.4 provides:  "(a)(1) Every person who, motivated by an unnatural or abnormal sexual interest in children, arranges a meeting with a minor or a person he or she believes to be a minor for the purpose of . . . engaging in lewd or lascivious behavior, shall be punished by a fine not exceeding five thousand dollars ($5,000), by imprisonment in a county jail not exceeding one year, or by both the fine and imprisonment.  [¶] . . . [¶]  (b) Every person described in paragraph (1) of subdivision (a)

---

[5]     The prosecution thereafter dismissed the section 288.3 count.

7

who goes to the arranged meeting place at or about the arranged time, shall be punished by imprisonment in the state prison for two, three, or four years." (§ 288.4.)

Defendant relies on *In re M.S.* (1995) 10 Cal.4th 698 (*M.S.*) to support his claim that the "motivated by" element requires that the specified motivation be a "substantial factor." The two minors involved in *M.S.* had participated in a physical assault on a group of gay men, which had been preceded by the minors shouting "antigay epithets" and making threats of harm to the victims. (*M.S.*, at pp. 707-708.) A petition was filed alleging that the minors had violated section 422.6, which makes it a misdemeanor to engage in certain conduct, including criminal threats, "*because of* one or more of the actual or perceived characteristics of the victim listed in subdivision (a) of Section 422.55." (§ 422.6, subds. (a), (b), italics added.) The petition also alleged assault and battery counts that were accompanied by enhancement allegations under section 422.7, which applies where "the crime is committed against the person or property of another *for the purpose of* intimidating or interfering with that other person's free exercise or enjoyment of any right secured to him or her" by law. (§ 422.7, italics added.) The juvenile court found the allegations true. (*M.S.*, at p. 709.)

The minors in *M.S.* claimed that the " 'because of' " language was unconstitutionally vague and that this language required proof of " 'but-for' causation." (*M.S.*, *supra*, 10 Cal.4th at pp. 716, 718.) The California Supreme Court concluded that the " 'because of' " language, which it referred to as the "discriminatory motivation," was not vague because this language was "commonly and properly used to indicate that an event, in this case the crime, was *caused in fact* by something, in this case the accused's prohibited bias."[6] (*M.S.*, at pp. 716-718, italics added.) The court noted that this same language appeared in a variety of other civil rights and antidiscrimination statutes, and it

_____

[6] The court also rejected the minors' claim that the statutes were unconstitutionally overbroad.

8

cited *People v. Superior Court (Caswell)* (1988) 46 Cal.3d 381 (*Caswell*) as an example of a criminal case in which it had upheld an analogous statute against a vagueness challenge. (*M.S.*, at pp. 717-718.) *Caswell* involved section 647, subdivision (d), which prohibited " 'loiter[ing] in or about any toilet open to the public for the purpose of engaging in or soliciting any lewd or lascivious or any unlawful act.' " (*Caswell*, at p. 390.)

After resolving the vagueness issue, the court considered the meaning of the " 'because of' " language. The minors claimed that the " 'because of' " language required " 'but-for' causation," while the Attorney General contended that all that was required was that the "bias motivation" " 'contributed to' or was 'a factor in' the offense." (*M.S.*, *supra*, 10 Cal.4th at pp. 718-719.) The California Supreme Court considered "the legislative purpose" in enacting these statutes and concluded that the "bias motivation" was not required to be the sole cause but only "a substantial factor" in the offense. "By employing the phrase 'because of' in sections 422.6 and 422.7, the Legislature has simply dictated the bias motivation must be a cause in fact of the offense, whether or not other causes also exist. [Citation.] When multiple concurrent motives exist, the prohibited bias must be a substantial factor in bringing about the crime." (*M.S.*, at p. 719.)

Defendant contends that the "motivated by" language in section 288.4 is analogous to the "because of" language construed by the California Supreme Court in *M.S.* and therefore should be accorded the same construction. While the two phrases are not identical, we agree with defendant that both phrases are "commonly . . . used" to refer to "a cause in fact . . . ." (*M.S.*, *supra*, 10 Cal.4th at pp. 716, 719).[7]

---

[7] The word "motive," the root of motivated, means "something (as a need or desire) that causes a person to act." (Merriam-Webster's Collegiate Dict. (10th ed. 1993) p. 759.) The word "because" means "for the reason that." (Merriam-Webster's Collegiate Dict., *supra*, p. 101.)

Like the California Supreme Court did in *M.S.*, we examine the Legislature's purpose in enacting section 288.4 to determine whether the common meaning of "motivated by" is consistent with the Legislature's intent. The section 288.4 offense was created by the Legislature in 2006.[8] (Stats. 2006, ch. 337, eff. Sept. 20, 2006.) The Legislature explicitly acknowledged that the language describing this offense had been "drawn from a long-standing statute (Pen. Code 647.6) that prohibits a person who has an abnormal sexual interest in children from annoying or bothering children."[9] (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 1128 (2005-2006 Reg. Sess.) as amended Mar. 7, 2006, p. D; see *People v. Yuksel* (2012) 207 Cal.App.4th 850, 855.) "This crime uses settled and court-tested language from Penal Code Section 647.6 - annoying or molesting (without physical contact) a child - about persons with an abnormal sexual interest in children. The crime defined is committed where the defendant, with the noted abnormal interest, contacts a child or a person they think is a child with the intent to engage in sexual activity." (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 1128 (2005-2006 Reg. Sess.) as amended Mar. 7, 2006, p. I.)

Since the Legislature intended for the motive element in section 288.4 to be the same as the one in section 647.6, we must examine that section. Section 647.6, subdivision (a)(1) makes it a crime for a person to "annoy[] or molest[] a child under 18

---

[8]     The offense was originally added as section 288.3 by an urgency measure in September 2006. In November 2006, Proposition 83 enacted a new section 288.3 creating a different crime. (Voter Information Guide, Gen. Elect. (Nov. 7, 2006) text of proposed law, p. 128.) In 2007, the original section 288.3 created by the Legislature was renumbered as section 288.4 without any substantive changes. (Stats. 2007, ch. 579 [only change was to the cross-reference to section 290].)

[9]     The Legislature referred to the proposed offense as "child luring." (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 1128 (2005-2006 Reg. Sess.) as amended Mar. 7, 2006, p. J.)

years of age . . . ."[10] This offense was originally proscribed by former section 647a. Neither section 647.6, subdivision (a)(1) nor its precursor contained an express motive element, but courts long ago held that the offense has a motive element. "Although no specific intent is prescribed as an element of this particular offense, a reading of the section as a whole in the light of the evident purpose of this and similar legislation enacted in this state indicates that the acts forbidden are those motivated by an unnatural or abnormal sexual interest or intent with respect to children."[11] (*People v. Pallares* (1952) 112 Cal.App.2d Supp. 895, 901; accord *In re Gladys R.* (1970) 1 Cal.3d 855, 867 [approving of *Pallares* and holding that the statute "applies only to offenders who are motivated by an unnatural or abnormal sexual interest or intent."].)

The Attorney General asserts that there is a "lack of authority" to support defendant's claim that the prohibited motivation in section 288.4 must be a "substantial factor" in the commission of the crime. However, she concedes that the California Supreme Court's opinion in *M.S.* "repeatedly equated an element requiring [that] an act be 'motivated by' a factor with an element requiring [that] an act be 'because of' a factor." By equating "because of" and "motivated by" elements in *M.S.*, the California Supreme Court provided considerable "authority" supporting defendant's position. Our examination of the legislative history of section 288.4 reveals that it is consistent with an

---

[10] Section 647.6, subdivision (a)(2), which was added to section 647.6 by the same legislation that created the section 288.4 offense, contains the same motive element as section 288.4. However, unlike section 288.4, section 647.6, subdivision (a)(2) does not contain a separate specific intent element.

[11] *After* the Legislature enacted section 288.4, a Court of Appeal held that the motive element of section 647.6, subdivision (a)(1) "does not merely protect children as a class" but is satisfied if the perpetrator has an unnatural or abnormal sexual interest in the individual child victim. (*People v. Shaw* (2009) 177 Cal.App.4th 92, 102-104 (*Shaw*).) Since the Legislature could not have been relying in 2006 on *Shaw*'s 2009 holding, the holding in *Shaw* is not relevant to our construction of section 288.4. Section 288.4 explicitly uses the word "children" in defining the motive element.

11

intent to target only those whose abnormal sexual interest in children was a substantial factor in causing their conduct. Indeed, it is not possible to conceive of a rational purpose for requiring proof of a prohibited motivation where that motivation was not required to be a substantial factor in the commission of the proscribed conduct.

"The Legislature, of course, is deemed to be aware of statutes and judicial decisions already in existence, and to have enacted or amended a statute in light thereof. [Citation.] Where a statute is framed in language of an earlier enactment on the same or an analogous subject, and that enactment has been judicially construed, the Legislature is presumed to have adopted that construction." (*People v. Harrison* (1989) 48 Cal.3d 321, 329.) Here, the Legislature must be deemed to have been aware of the California Supreme Court's 1995 *M.S.* decision requiring proof that a motivation element was a substantial factor in the commission of the proscribed conduct when it enacted section 288.4's analogous motivation element in 2006. We conclude that section 288.4 requires that the prohibited motivation be a substantial factor in the commission of the prohibited act. With this construction of the statute in mind, we proceed to defendant's claims that the evidence does not support his conviction and that the trial court prejudicially erred in failing to give a sua sponte substantial factor instruction.

### 1. Substantial Evidence

Defendant claims that the record lacks substantial evidence supporting the "motivated by" element. He contends that there was no evidence that he had "an 'unnatural or abnormal' sexual interest in 'children' " or that he was "motivated by" such an interest.

Our standard of review is well established. " '[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (*People* v. *Johnson* (1980) 26 Cal.3d 557, 576, quoting *Jackson* v. *Virginia* (1979) 443 U.S. 307, 318-319.) "[The] appellate court must view the evidence in the light most

12

favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." (*People* v. *Reilly* (1970) 3 Cal.3d 421, 425; accord *People* v. *Pensinger* (1991) 52 Cal.3d 1210, 1237.) "Evidence is sufficient to support a conviction only if it is substantial, that is, if it '"reasonably inspires confidence"' [citation], and is 'credible and of solid value.'" (*People* v. *Raley* (1992) 2 Cal.4th 870, 891.)

This standard of review requires us to presume that the jury drew all reasonable inferences that could support its finding that defendant had an unnatural or abnormal sexual interest in children. Defendant points out that there was no evidence that he had ever previously exhibited a sexual interest in children. This is true. However, defendant's conduct in this case was sufficient to support a reasonable inference that his sexual interest in "Maria" was demonstrative of his general sexual interest in children. Defendant did not merely have a brief interaction with "Maria" nor did he spend a significant period of time believing she was an adult. Her first e-mail to defendant, just *nine minutes* after he responded to the advertisement, plainly told him that she was 15 years old. Yet upon learning that "Maria" was 15 years old, he did not terminate his communications with her. Instead, he continued to communicate with her until she cut him off. After that, he continued for an extended period of time to monitor her advertisement for a sex partner, reinitiated contact, and invited her to keep e-mailing him. There was no reason to do so other than a sexual interest. They had not engaged in and did not engage in any significant communication that was unrelated to their arrangement of a sexual rendezvous. "Maria" was a stranger to him so defendant's interest in her could not have been specific to her; all he knew about "Maria" was the generic physical description in the advertisement, her age, and her sexual availability. Based solely on that limited information, defendant devoted hours of his time to arranging to meet 15-year-old "Maria." Even after learning that "Maria" did not exist, defendant told Hoskins that, "if there would have actually been a 15 year old," he would have had sex with her

13

despite the fact that he knew that would be wrong.  We find this evidence sufficient to support a reasonable inference that defendant had an unnatural or abnormal sexual interest in children.

Defendant claims that Hoskins's depiction of "Maria" as "physically mature and sexually active" rebutted the inference that his interest in her was "unnatural or abnormal . . . ."  He focuses on the fact that the original advertisement did not say that "Maria" was a child and reasons from this premise that his response to the advertisement did not reflect that he had a sexual interest in *children*.  We agree that defendant's *initial* response to the advertisement did not reflect that defendant had a sexual interest in children.  It was his subsequent actions in continuing to pursue "Maria" after he learned that she was 15 years old that reflected his sexual interest in children.  We cannot credit defendant's claim that it is not "unnatural" or "abnormal" for a "lonely" 30-year-old man who initially responds to an advertisement seeking a sexual rendezvous with a female he believes to be an adult and immediately learns that the female is *a 15-year-old child* to proceed to arrange a sexual rendezvous with that child.  The jury could have reasonably concluded that the fact that a 30-year-old man makes arrangements for a sexual rendezvous with a stranger he believes to be 15 years old demonstrates that he has an unnatural and abnormal sexual interest in children.

Defendant also contends that the prosecution failed to present substantial evidence that his sexual interest in children "motivated" his commission of the proscribed conduct.  As we have already discussed, the "motivated by" element requires that the motivation be a substantial factor in the commission of the offense.  " 'The substantial factor standard is a relatively broad one, requiring only that the contribution of the individual cause be more than negligible or theoretical.'  [Citation.]  Thus, 'a force which plays only an "infinitesimal" or "theoretical" part in bringing about injury, damage, or loss is not a substantial factor' [citation], but a very minor force that does cause harm is a substantial

14

factor [citation]." (*Bockrath v. Aldrich Chemical Co., Inc.* (1999) 21 Cal.4th 71, 79; accord *M.S.*, *supra*, 10 Cal.4th at p. 719.)

As noted above, defendant reinitiated contact with "Maria" after he learned that she was 15 years old and continued to pursue a sexual rendezvous with a 15-year-old girl for hours despite knowing nothing more about "Maria" other than her age, a generic physical description, and her sexual availability. The jury could have drawn a reasonable inference that his belief that "Maria" was a child played a significant role and thus was a "substantial factor" in motivating defendant to engage in his lengthy pursuit of a sexual rendezvous with "Maria." We find the evidence sufficient to support a finding that defendant's unnatural or abnormal sexual interest in children was a substantial factor in motivating him to arrange a meeting with "Maria."

Defendant contends that "[b]y effectively arguing that the motivation element is met whenever the intent element is satisfied, [the Attorney General] disregards the rule that 'a statute should not be construed to make portions of it meaningless.'" We do not understand the Attorney General to be arguing that the "motivated by" element is satisfied *whenever* the specific intent element of section 288.4 is established. Section 288.4's specific intent element requires proof that, when he or she arranged the meeting, the defendant intended to engage in sexual conduct with a person he or she believed to be a child. The motivation element requires proof that, when he or she arranged the meeting, the defendant was motivated by an unnatural or abnormal sexual interest in children. The primary difference between the two elements is the "unnatural or abnormal" nature of the interest. Where a person arranges a meeting with a child of a similar age (such as two 16-year-olds arranging a tryst or even an 18-year-old arranging a meeting with his 17-year-old girlfriend), the sexual interest motivating the arrangement of the meeting will not usually be found to be "unnatural or abnormal" and therefore will not violate section 288.4 even though the person arranging the meeting intends to engage in sexual conduct with a child. The other difference between the two elements is that the

15

specific intent element may be satisfied by proof of a sexual interest in a particular individual, while the "motivated by" element requires a sexual interest in "children." Thus, proof of the specific intent element does not necessarily satisfy the "motivated by" element. In this case, however, the same evidence established both elements. When a 30-year-old male doggedly pursues sex with a stranger he believes to be a 15-year-old girl as defendant did in this case, it may demonstrate both that he is "motivated by an unnatural and abnormal sexual interest in children" and that he intends to engage in sexual conduct with a person he believes to be a 15-year-old girl. Substantial evidence supports the jury's verdict.

## 2. Instructions

Defendant asserts that the trial court prejudicially erred in failing to sua sponte instruct the jury that the "motivated by" element was required to be a "substantial factor" in his commission of the offense. He claims that such an instruction would have required the jury to find that the "motivated by" element was "more than a trivial or remote factor" in the commission of the proscribed conduct. (See CALCRIM No. 1350 (hate crimes) ["If you find that the defendant had more than one reason to commit the alleged acts, the bias described here must have been a substantial motivating factor. A *substantial factor* is more than a trivial or remote factor. However, it does not need to be the only factor that motivated the conduct."].)

### a. Background

Both the defense and the prosecutor requested CALCRIM No. 1126 on the section 288.4 count, and the court agreed to give that instruction. Defendant did not request a substantial factor instruction. The version of CALCRIM No. 1126 given to the jury provided, in relevant part: "The defendant is charged in Count 2 with going to a meeting with a minor for a lewd purpose, in violation of Penal Code Section 288.4(b). To prove that the defendant is guilty of this crime, the People must prove that: [¶] One, the defendant arranged a meeting with a person he believed to be a minor; [¶] Two,

16

when the defendant did so, he was motivated by an unnatural or abnormal sexual interest in children; [¶] Three, at that meeting, the defendant intended to expose his genitals or pubic or rectal area or have the minor expose her genitals or pubic or rectal area or engage in lewd or lascivious behavior; [¶] And four, the defendant went to the arranged meeting place at or about the arranged time."[12]

The prosecutor argued to the jury: "What do we mean by 'abnormal' or 'unnatural' sexual interest in children? Well, we're not necessarily meaning that this has to be someone who is only sexually interested in children because then what would happen if he actually had shown up and there was a 15 year old girl? We're not talking about someone who only seeks out children for sexual purposes, someone who focuses solely on children. That certainly falls under this category, but it's really only one type of predator that we're talking about. There's also the people who are predators via access, and that's what we're got here. [¶] What we've got here is a man 30 years old who, according to what he tells Sergeant Hoskins, he's lonely, he's horny, he broke up with his girlfriend a few months ago, and he's strolling the Internet on Craigslist for casual encounters. [¶] What we know is that he doesn't care that Maria is supposed to be 15. He gets the information that Maria is 15 and he ignores it. He continues to correspond with her. And when she stops talking to him, he's the one that actually makes that extra step and reinitiates contact. [¶] We know that she [*sic*], in fact, asked him [*sic*] to contact him if the hookup doesn't work out and admits that it is something that someone should be sent to prison for a long time for. He knows it's wrong. And that's the unnatural or abnormal interest we're talking about. [¶] We're talking about someone who when provided access to a 15-year-old child doesn't do what we would expect from

---

[12] The jury was also instructed: "The specific intent required for the crime of meeting a minor for a lewd purpose, as charged in Count 2, is the specific intent to expose genitals or pubic or rectal areas or to have the minor expose her genitals or pubic or rectal areas or to engage in lewd and lascivious conduct."

17

a normal person.  He doesn't say no.  He doesn't stop communicating.  He doesn't decide to cease contact that point.  He does the opposite.  He disregards that.  He doesn't care. And that is abnormal and that is unnatural.  [¶]  A normal person when faced with the prospect of potentially having sexual contact with a 15-year-old girl is going to say no.  Is going to say you're too young for this, we can't do this, no way.  He never does that."

### b.  Analysis

Defendant claims that there "are three reasons why the trial court had a sua sponte duty to instruct the jury regarding the substantial factor requirement here."  (Italics omitted.)  First, he asserts that "a lay jury can hardly be expected to discover the 'substantial factor' requirement on its own."  Second, he argues that it is difficult to discern a person's motive.  Third, he claims that a sua sponte duty existed in this case because there was, in his view, little evidence of his motivation.

We can find no authority for the proposition that a trial court has a sua sponte duty to give a "substantial factor" instruction.  Defendant cites *People v. Sweeney* (2009) 175 Cal.App.4th 210, but *Sweeney* actually held that the trial court erred because it failed to instruct on *the causation element* in a sexually violent predator proceeding.  (*Id*. at pp. 222-223.)  Here, the trial court did not fail to instruct the jury on any of the elements of the offense.  It expressly instructed the jury that it could not convict defendant of the offense unless it found that defendant "was motivated by an unnatural or abnormal sexual interest in children."  There is no merit to defendant's suggestion that *M.S.* provides the necessary authority.  *M.S.* was a juvenile case where there was a court trial, and the California Supreme Court said nothing about a trial court's instructional obligations.  The mere fact that the standard CALCRIM instruction for hate crimes now includes a substantial factor instruction does not itself provide authority for the proposition that a sua sponte instruction is required.  "[J]ury instructions, whether published or not, are not themselves the law, and are not authority to establish legal propositions or precedent." (*People v. Morales* (2001) 25 Cal.4th 34, 48, fn. 7.)

18

The trial court instructed the jury on the "motivated by" element of the offense. Defendant's claim of error is solely that the court did not explain to the jury that "motivated by" meant that "an unnatural or abnormal sexual interest in children" was a substantial factor, that is a *more than trivial or remote factor*, in the commission of the proscribed conduct. The trial court did not provide a definition of "motivated by" but simply instructed the jury on the "motivated by" element using the language of the statute. Statutory language "'is generally an appropriate and desirable basis for an instruction, and is ordinarily sufficient when the defendant fails to request amplification. If the jury would have no difficulty in understanding the statute without guidance, the court need do no more than instruct in statutory language.'" (*People v. Estrada* (1995) 11 Cal.4th 568, 574.) A trial court is obligated to define a term only if the "'statutory term "does not have a plain, unambiguous meaning," has a "particular and restricted meaning" [citation], or has a technical meaning peculiar to the law or an area of law [citation].' [Citation.] 'A word or phrase having a technical, legal meaning requiring clarification by the court is one that has a definition that differs from its nonlegal meaning.'" (*People v. Hudson* (2006) 38 Cal.4th 1002, 1012.) "The law is settled that when terms have no technical meaning peculiar to the law, but are commonly understood by those familiar with the English language, instructions as to their meaning are not required." (*People v. Anderson* (1966) 64 Cal.2d 633, 639-640 (*Anderson*).)

The phrase "motivated by" as used in section 288.4 has a "commonly understood" "nonlegal" meaning. The common meaning of the word "motive," the root of motivated, is "something (as a need or desire) *that causes a person to act*." (Merriam-Webster's Collegiate Dict., *supra*, p. 759, italics added.) Given this common understanding of the phrase "motivated by," the trial court's instruction that the jury was required to find that, at the time of the conduct, defendant was "motivated by an unnatural or abnormal sexual interest in children" fully informed the jury of the need for proof that the motivation "cause[d]" the conduct. "Defendant's contention essentially is that the instructions given

19

needed amplification or explanation; but since he did not request such amplification or explanation, error cannot now be predicated upon the trial court's failure to give them on its own motion." (*Anderson*, *supra*, 64 Cal.2d at p. 639.)

Because "motivated by" is a commonly understood phrase that is naturally understood to require causation, a lay jury would readily understand that the "motivated by" element required that the motivation be *a cause* of defendant's conduct. The fact that it may be difficult to determine a person's motive does not support a claim that a substantial factor instruction was required. The jury was instructed on the need for proof beyond a reasonable doubt that defendant harbored the requisite motive. A substantial factor instruction would have made no difference in discerning whether defendant harbored such a motive because the instructions already informed the jury of the need for a causation finding. Finally, as we have already determined, the jury was presented with substantial evidence supporting the "motivated by" element of the offense. Since defendant did not request a "substantial factor" instruction and the court had no sua sponte duty to give such an instruction, the trial court did not err in failing to so instruct the jury.[13]

## B.  Entrapment

Defendant claims that the trial court prejudicially erred in refusing to instruct on entrapment.

---

[13] We note that a substantial factor instruction appears to offer no potential benefit to a defendant. The plain meaning of the "motivated by" instruction given by the court required the jury to find that the conduct was *caused by* the motivation. A substantial factor instruction would have told the jury that the motivation needed to be only *a more than trivial factor* in causing the conduct. Such an instruction would appear to benefit the prosecution rather than the defense.

20

The prosecution made an in limine motion seeking a pretrial Evidence Code section 402 hearing on the sufficiency of defendant's entrapment defense to merit instructions. The court deferred this motion until after it had heard the evidence. After Hoskins testified, defendant's trial counsel told the court that she wished to present an entrapment defense. The prosecutor asserted that there was not substantial evidence to support an entrapment defense. The court found that entrapment was not "supported by any level of substantial evidence" and denied the defense request.

Entrapment instructions were required "if, but only if, substantial evidence supported the defense." (*People v. Watson* (2000) 22 Cal.4th 220, 222 (*Watson*).) The inquiry "focuses on the police conduct and is objective." (*Id*. at p. 223.) "Entrapment is established if the law enforcement conduct is likely to induce a *normally law-abiding person* to commit the offense. [Citation.] '[S]uch a person would normally resist the temptation to commit a crime presented by the simple opportunity to act unlawfully. Official conduct that does no more than offer that opportunity to the suspect—for example, a decoy program—is therefore permissible; but it is impermissible for the police or their agents to pressure the suspect by overbearing conduct such as badgering, cajoling, importuning, or other affirmative acts likely to induce a normally law-abiding person to commit the crime.'" (*Ibid*.) Thus, there are "two guiding principles." (*Ibid*.) "'First, if the actions of the law enforcement agent would generate in a normally law-abiding person a motive for the crime other than ordinary criminal intent, entrapment will be established.'" (*Ibid*.) "'Second, affirmative police conduct that would make commission of the crime unusually attractive to a normally law-abiding person will likewise constitute entrapment. Such conduct would include, for example, a guarantee that the act is not illegal or the offense will go undetected, an offer of exorbitant consideration, or any similar enticement.'" (*Ibid*.)

We examine Hoskins's conduct to determine whether he merely offered defendant an "'opportunity to act unlawfully,'" which a normally law-abiding person would resist,

21

or instead used " 'overbearing conduct such as badgering, cajoling, importuning, or other affirmative acts' " to apply " 'pressure' " that would be " 'likely to induce a normally law-abiding person to commit the crime.' " (*Watson*, *supra*, 22 Cal.4th at p. 223.)

Hoskins initially posted an advertisement that purported to be from an attractive female seeking a one-time sexual partner for that day. When defendant responded to the advertisement, Hoskins immediately identified the female as a 15-year-old girl.[14] Defendant responded with an e-mail that suggested "Maria" do something else besides "hookup," so Hoskins immediately terminated the communications. It was defendant who continued to monitor the advertisement, reinitiated contact, and provided his e-mail address to "Maria" so that they could maintain contact. Hours later, Hoskins sent defendant an e-mail asking if he was "still interested." In response to defendant's immediate e-mail seeking the location of "Maria," Hoskins sought to clarify the nature of defendant's interest in "Maria." He did not use any enticing or overbearing language. He first asked: "If you are down and not into games. We both know what this is about." When defendant immediately responded by seeking to schedule a meeting but without specifying its purpose, Hoskins asked: "Well are you down or do you just want to talk?" Defendant immediately responded: "I'm down. What's the plan?" The remainder of their lengthy interchange primarily concerned the specifics of what "Maria" would be willing to do. The only possible "enticements" were a request by "Maria" that defendant perform oral sex on her and a statement by "Maria" that she was "loud if it feels good."

Hoskins's conduct would not have induced a *normally law-abiding man* to arrange to have sex with a 15-year-old girl. His conduct did nothing more than present defendant with the opportunity to commit the offense. "[A] person who steals when given the opportunity is an opportunistic thief, not a normally law-abiding person." (*Watson*,

---

[14]     We do not view as an "overbearing" enticement Hoskins's statement that defendant was "cute."

22

*supra*, 22 Cal.4th at p. 224.)  Similarly, a person who arranges to have sex with a child when given the opportunity is an opportunistic sexual predator, not a normally law-abiding person.  A normally law-abiding person would not have continued to arrange a "hookup" after Hoskins revealed that "Maria" was a 15-year-old girl.  Nothing Hoskins did thereafter would have " 'pressure[d]' " a normally law-abiding man to pursue sex with a 15-year-old girl.  An objective examination of Hoskins's conduct reveals no basis for an entrapment defense.

Defendant contends that when the police conduct is viewed "[i]n the context of a lonely male seeking sexual activity with an adult woman on a Saturday night in Salinas" it was the type of conduct that would induce a normally law-abiding person to commit the offense.  He claims that Hoskins's use of "enticing facts, flattery, a 'bait and switch' and sexual language" would have induced a normally law-abiding person to commit the offense.  The "enticing facts" that defendant identifies are:  (1) the advertisement's failure to identify "Maria" as a child and implicit representation that she was an adult; (2) the advertisement's description of "Maria" as attractive and sexually available; (3) the response from Maria calling defendant "cute" and at the same time identifying herself as a 15-year-old girl; and (4) the subsequent communications about what sex acts would be involved.  First, a normally law-abiding man would not have been induced to commit the offense simply because he did not learn that the female was a 15-year-old girl until after he sent a single short e-mail responding to a Craigslist advertisement no matter how attractive the advertisement made the girl sound.  Nor would he have been enticed to commit a crime as a result of the 15-year-old girl calling him "cute."  Second, a normally law-abiding man would not have initiated further communications with "Maria" about a prospective sexual "hookup" after learning that she was 15 years old.  Thus, he would not have engaged in any of the communications regarding sex acts that he claims were so enticing.

23

Defendant also claims that Hoskins applied "pressure" to persuade him to engage in sexual activity after he suggested that "Maria" do something else. We disagree. After defendant suggested that "Maria" do something other than have a "hookup," Hoskins terminated the communications. It was defendant who reinitiated the conversation and asked about her "hookup." When Hoskins later told defendant that the "hookup" had not happened, defendant immediately asked if "Maria" wanted to "see me" and asked about her location. At this point, Hoskins sought to clarify what the nature of their contact would be. He asked if defendant was "down and not into games" and when defendant did not give a straight answer he asked "are you down or do you just want to talk?" A normally law-abiding man would not be pressured into a sexual rendezvous with a 15-year-old girl by her asking him if he wanted to have sex or "just want[ed] to talk."[15]

Finally, defendant suggests that Hoskins enticed him by suggesting that they would not be "caught" and that defendant could protect "Maria" from other more dangerous men. While Hoskins did make comments about "Maria" not wanting to be seen rendezvousing with defendant, such comments would not have led a normally law-abiding man to agree to have sex with a 15-year-old girl. Nor would the comments by Hoskins that there were dangerous people out there. Such comments would have caused a normally law-abiding man to consider contacting the police to alert them to the danger that "Maria" was facing.

There was no evidence that Hoskins engaged in any conduct that could have persuaded a normally law-abiding man to agree to a sexual rendezvous with a 15-year-old girl. Therefore, the trial court did not err in declining to instruct on entrapment.

---

[15] Defendant claims that Hoskins "made it clear that there would be no further communications if Appellant 'just want[ed] to talk.'" An objective reading of the emails does not support this interpretation. In any case, a normally law-abiding 30-year-old man would not be enticed to arrange a sexual rendezvous with a 15-year-old stranger simply because it was the only option for continuing to communicate with her.

24

### C. Fines and Fees

Defendant challenges the court's imposition of probation services fees on the grounds that he was not apprised of his right to a hearing on his ability to pay probation fees and that there was not sufficient evidence that he had the ability to pay the probation fees. Defendant did not object to the court's imposition of probation services fees. A defendant who fails to object to the imposition of probation supervision fees forfeits his challenge. (*People v. Aguilar* (2015) 60 Cal.4th 862, 866-869.) Defendant concedes that he forfeited his challenge, but he claims that his trial counsel was prejudicially deficient in failing to object to the imposition of these fees.

To succeed on an appellate claim of ineffective assistance, a defendant must establish that his trial counsel's performance was deficient and that his defense was prejudiced by the deficiency. (*People v. Ledesma* (1987) 43 Cal.3d 171, 218; *Strickland v. Washington* (1984) 466 U.S. 668, 687 (*Strickland*).) "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Strickland*, at p. 694.) Whenever counsel's conduct can be reasonably attributed to sound strategy, a reviewing court will presume that the conduct was the result of a competent tactical decision, and the defendant must overcome that presumption to establish ineffective assistance. (*Strickland*, at p. 689)

When the court imposed the probation services fees at the sentencing hearing, it expressly informed defendant that these fees were "subject to a hearing if necessary." The trial court's written probation order provided: "PROBATION SERVICE FEES: The defendant is ordered to pay $864.00 for the cost of preparation of the probation report plus $81.00 per month as the cost of supervised probation *in accordance with his/her ability to pay*. The defendant is ordered to provide the probation officer with financial information *for evaluation of his/her ability to pay and is ordered to pay the amount probation determines he/she can afford.*" (Underscore omitted & italics added.) Defendant had testified at trial that he was currently unemployed but had previously been

a student in a registered nursing program. One of the conditions of his probation was that he "maintain gainful employment or become enrolled as a full-time student."

First of all, the court did inform defendant of his right to a hearing on the probation services fees when it told him at the sentencing hearing that these fees were "subject to a hearing . . . ." Second, defendant's trial counsel was not deficient in failing to object on the ground that defendant lacked the ability to pay the fees. Since the probation order limited defendant's obligation to pay the probation services fees to the amount that he could afford, his trial counsel could have reasonably concluded that there was nothing to be gained by objecting. After all, defendant's probation required him to "maintain gainful employment or become enrolled as a full-time student." If defendant obtained gainful employment, he would be able to pay the fees. If not, his obligation to pay the fees would be limited to the amount he could afford. Under these circumstances, defendant's trial counsel could have reasonably decided that highlighting defendant's current lack of gainful employment might sway the court against granting probation while affording defendant no benefit. Defendant has failed to establish that his trial counsel was deficient in failing to object to the court's imposition of probation services fees.

Defendant also challenges the court's imposition of a $1,610 section 290.3 fine. Defendant did not object to the court's imposition of this fine, and the Attorney General contends that he forfeited this challenge. However, as defendant's appellate challenge is to the court's *statutory authority* to impose *this amount*, he has not forfeited this challenge. (*People v. Chambers* (1998) 65 Cal.App.4th 819, 823.)

At the sentencing hearing, the court ordered defendant to "[p]ay a $1,610 fine pursuant to 290.3. That includes the $300 restitution fine." The court's written order of probation imposed a $1,610 section 290.3 fine, which it stated "includes $300.00 SRF." Neither at the sentencing hearing nor in the written order did the court identify the

26

specific statutory bases for the $1,610 amount of the fine. Section 290.3 authorizes the court to impose a $300 fine. (§ 290.3, subd. (a).)

The Attorney General concedes that the trial court failed to identify any statutory authority for the imposition of a $1,610 fine, and she also concedes that even her search for statutory authority for increasing the amount of a $300 section 290.3 fine leaves $50 of that amount "unexplained." "'Although we recognize that a detailed recitation of all the fees, fines and penalties on the record may be tedious, California law does not authorize shortcuts.'" (*People v. Eddards* (2008) 162 Cal.App.4th 712, 717.) Trial courts are required to "specify[] the statutory bases of all fees, fines, and penalties" imposed on a defendant. (*Id*. at p. 718.) Since the record lacks any indication of the statutory authority for the court's imposition of a section 290.3 fine in the amount of $1,610, we will remand the matter to the trial court for it to detail the statutory bases for the amount of the section 290.3 fine and to correct the amount if necessary.

## IV.  Disposition

The judgment is reversed and remanded to the trial court with directions to prepare an amended probation order identifying the statutory bases for the court's calculation of the amount of the section 290.3 fine and correcting the amount of that fine if the $1,610 amount is not statutorily authorized.

_____
Mihara, J.

WE CONCUR:

_____
Bamattre-Manoukian, Acting P. J.

_____
Grover, J.

27

Trial Court:                              Monterey County Superior Court


Trial Judge:                             Honorable Pamela L. Butler


Attorney for Defendant and Appellant:    Alexis Ivar Haller
                                         Under Appointment by the Sixth
                                         District Appellate Program


Attorneys for Plaintiff and Respondent:  Kamala D. Harris
                                         Attorney General of California

                                         Gerald Engler
                                         Chief Assistant Attorney General

                                         Jeffrey M. Laurence
                                         Acting Senior Assistant Attorney General

                                         Catherine A. Rivlin
                                         Supervising Deputy Attorney General

                                         David H. Rose
                                         Deputy Attorney General