Filed 2/29/24  P. v. Andorfer CA1/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>       Plaintiff and Respondent,<br><br>v.<br><br>PATRICK JOSEPH ANDORFER,<br><br>       Defendant and Appellant. | A165770<br><br>(San Mateo County<br> Super. Ct. No. 15SF002528A) |

A plausible basis exists to mandate lifetime sex offender registration for violations of Penal Code sections 288.3[1] and 288.4 while imposing a 20-year minimum registration period, and providing the opportunity to petition for removal from the registry, for violations of section 288, subdivision (a) (section 288(a)).

Patrick Joseph Andorfer appeals from an order mandating lifetime sex offender registration after he was convicted of meeting a minor for lewd purposes and contacting a minor for a sexual offense.  He contends that mandatory lifetime registration violates his equal protection rights under the federal and state Constitutions as the sex offender registration law treats him differently than others who commit sexual offenses against children—

---

[1] Undesignated statutory references are to the Penal Code.

1

who do not receive a lifetime registration mandate—without a rational basis for doing so.

We conclude a rational basis exists for the disparate treatment, and we affirm.

## I. BACKGROUND

In 2015, Andorfer, then 51 years old, sent sexual messages to a 15-year-old girl via social media and text. Andorfer arranged to meet the girl; when he arrived at the meeting place, he was arrested.

A jury convicted Andorfer of meeting a minor for lewd purposes (§ 288.4, subd. (b)) and contacting a minor for a sexual offense (§ 288.3, subd. (a)). The trial court sentenced him to three years in prison, which he had already served, and imposed lifetime sex offender registration pursuant to section 290.

## II. DISCUSSION

Andorfer's sole claim on appeal is that mandatory lifetime sex offender registration for convictions pursuant to sections 288.3 and 288.4 violates his equal protection rights under the federal and state Constitutions when compared to a minimum term registration period imposed on offenders convicted pursuant to section 288(a). As we explain below, we disagree.

### A. Pertinent Offenses and Sex Offender Registration Requirements

To place the issues in context, we begin by describing the statutes codifying the relevant offenses and imposing sex offender registration mandates. Section 288.3, subdivision (a) makes it a felony to contact, or attempt to contact, a minor with the intent to commit specified sex offenses.

Section 288.4, subdivision (a)(1) makes it a felony to arrange a meeting with a person believed to be a minor, when motivated by an abnormal sexual interest in children, for specified purposes, including engaging in lewd or

2

lascivious behavior. Section 288.4, subdivision (b) criminalizes going to the arranged meeting place at the arranged time.

The offenses described in sections 288.3 and 288.4 were created in 2006. Section 288.3 was adopted by voters in 2006 as part of Proposition 83. (*People v. Korwin* (2019) 36 Cal.App.5th 682, 689.) The purpose of Proposition 83 was " 'to protect Californians from the threat posed by sex offenders.' " (*Korwin*, at p. 690.) Proposition 83 placed " 'a high priority on maintaining public safety through a highly skilled and trained law enforcement as well as laws that deter and punish criminal behavior.' " (*Ibid*.) The initiative's findings and declarations observed the " 'universal use of the Internet has also ushered in an era of increased risk to our children by predators using this technology as a tool to lure children away from their homes and into dangerous situations. Therefore, to reflect society's disapproval of this type of activity, adequate penalties must be enacted to ensure predators cannot escape prosecution.' " (*Ibid*.)

Also in 2006, the Legislature created the section 288.4 offense—along with multiple other offenses involving child victims—by urgency measure.[2] (*People v. Fromuth, supra*, 2 Cal.App.5th at p. 101, fn. 8; *People v. Cornett* (2012) 53 Cal.4th 1261, 1267.) The primary purpose of the measure "was to prevent 'future victimization' of the community by sex offenders." (*Cornett*, at p. 1267.)

---

[2] "The offense was originally added as section 288.3 by an urgency measure in September 2006. In November 2006, Proposition 83 enacted a new section 288.3 creating a different crime. [Citation.] In 2007, the original section 288.3 created by the Legislature was renumbered as section 288.4 without any substantive changes." (*People v. Fromuth* (2016) 2 Cal.App.5th 91, 101, fn. 8.)

California law has long required persons convicted of certain sex crimes to register as sex offenders. (*People v. Mosley* (2015) 60 Cal.4th 1044, 1048.) "For many years, California took a one-size-fits-all approach to sex offender registration: If registration was required, registration was always for life." (*People v. Franco* (2024) 99 Cal.App.5th 184, 190 (*Franco*).) Consistent with this approach, section 290 imposed automatic lifetime registration for certain sex offense convictions. (*Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 876–877 (*Johnson*).) Effective January 2021, however, the Legislature amended section 290 and established a three-tiered registry for adult sex offenders, requiring registration for a minimum of 10 years (tier one), 20 years (tier two), or for life (tier three), depending on the offense. (*Legg v. Department of Justice* (2022) 81 Cal.App.5th 504, 509 (*Legg*).)

The purpose of the tiered registry system was to improve public safety by focusing resources and attention on high-risk offenders—those likely to reoffend. High-risk offenders would remain on the registry for life while lower or medium-risk offenders—tiers one and two—would be allowed to petition for removal from the registry. (See *Franco, supra*, 99 Cal.App.5th at p. 191.)

In this case, Andorfer compares his offenses to section 288(a), which criminalizes the willful commission of "any lewd or lascivious act . . . upon . . . a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child." A conviction under section 288(a) is a tier two offense requiring a minimum 20-year registration and allowing the offender to petition for termination from the registry if certain criteria are met. (§§ 290, subds. (c), (d)(2)(A), 290.5, subd. (a)(1).)

In contrast, Andorfer's convictions under sections 288.3[3] and 288.4 are tier three offenses requiring lifetime sex offender registration. (§ 290, subd. (d)(3)(C)(xi), (xii)).)

## B. Equal Protection Principles

"The United States and California Constitutions prohibit denial of equal protection of the laws." (*Legg, supra*, 81 Cal.App.5th at p. 510.) The federal and state equal protection guarantees require "the state to treat all persons similarly situated alike or, conversely, to avoid all classifications that are 'arbitrary or irrational' and those that reflect ' "a bare . . . desire to harm a politically unpopular group." ' " (*Ibid.*)

"An equal protection analysis has two steps. ' " 'The first prerequisite . . . is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner.' . . ." ' [Citation.] If the groups are similarly situated, the next question is whether the disparate treatment can be justified by a constitutionally sufficient state interest." (*Conservatorship of Eric B.* (2022) 12 Cal.5th 1085, 1102.) Varying levels of judicial scrutiny apply to this inquiry depending on the type of claim. (*Id.* at p. 1107.) Most " 'legislation is tested only to determine if the challenged classification bears a rational relationship to a legitimate state purpose.' [Citation.] However, differences 'in statutes that involve suspect classifications or touch upon fundamental interests are subject to strict

---

[3] Under section 290, a section 288.3 violation is a tier three offense unless it was committed with the intent to commit other targeted offenses which are not at issue here and which do not result in mandatory lifetime registration if certain criteria are met. (§ 290, subds. (c)(2), (d)(3)(C)(xi).) It is undisputed that Andorfer's section 288.3 conviction was for the targeted offense of section 288, subdivision (c)(1), which requires lifetime sex offender registration.

5

scrutiny, and can be sustained only if they are necessary to achieve a compelling state interest.' " (*Ibid*.)

The parties assert, and we agree, that rational basis review applies to Andorfer's claim. (See *Legg, supra*, 81 Cal.App.5th at p. 511.) Under rational basis review, equal protection of the law "is denied only where there is no 'rational relationship between the disparity of treatment and some legitimate governmental purpose.' [Citation.] In other words, the legislation survives constitutional scrutiny as long as there is ' "any reasonably conceivable state of facts that could provide a rational basis for the classification." ' [Citation.] This standard of rationality does not depend upon whether lawmakers ever actually articulated the purpose they sought to achieve. Nor must the underlying rationale be empirically substantiated. [Citation.] While the realities of the subject matter cannot be completely ignored [citation], a court may engage in ' "rational speculation" ' as to the justifications for the legislative choice [citation]. It is immaterial for rational basis review 'whether or not' any such speculation has 'a foundation in the record.' " (*People v. Turnage* (2012) 55 Cal.4th 62, 74–75.) "To mount a successful rational basis challenge, a party must ' "negative every conceivable basis" ' that might support the disputed statutory disparity. [Citations.] If a plausible basis exists for the disparity, courts may not second-guess its ' "wisdom, fairness, or logic." ' " (*Johnson, supra*, 60 Cal.4th at p. 881.)

We review an equal protection claim de novo. (*California Grocers Assn. v. City of Los Angeles* (2011) 52 Cal.4th 177, 208.)

## C. Analysis

Here, it is undisputed that Andorfer—who violated sections 288.3 and 288.4—is similarly situated to offenders of section 288(a) with respect to sex offender registration. Therefore, the question before us is whether a

6

plausible basis exists to mandate lifetime registration for the former while imposing a 20-year minimum registration period, and providing the opportunity to petition for removal from the registry, for the latter. The answer is yes.

A plausible basis for the disparate treatment exists because the Legislature could have concluded sections 288.3 and 288.4 offenders pose a greater risk of recidivism than section 288(a) offenders. (See *Franco, supra*, 99 Cal.App.5th at p. 191.) We find support for this rationale when we consider the background of sections 288.3 and 288.4 and the nature of the pertinent offenses in conjunction with the purpose of the new tiered registry system.

The nature of the offenses proscribed by sections 288.3 and 288.4 differs from a section 288(a) offense. While a section 288(a) offense can occur spontaneously, the offenses in sections 288.3 and 288.4 are "luring" crimes. (See *People v. Keister* (2011) 198 Cal.App.4th 442, 452 [section 288.3]; *People v. Yuksel* (2012) 207 Cal.App.4th 850, 854 [section 288.4].) We agree with the People's assertion that the planning typical of cultivating a relationship with the targeted minor evinces a predatory mindset that goes beyond an impulsive sexual act. (See, e.g., *People v. Medelez* (2016) 2 Cal.App.5th 659, 663 [luring requires preparatory communication].) The concerns leading to the creation of sections 288.3 and 288.4—including increased risk to children by adult sexual predators using the Internet—are "not always present when a person violates subdivision (a) of section 288, since a violation of that provision can involve consensual sexual relations between minors or teenagers in a romantic relationship. [Citation.] Thus, although those convicted of offenses under section 288, subdivision (a) are subject to harsher penalties . . . , the Legislature reasonably could have determined that

7

section 288, subdivision (a) offenses could be committed by younger offenders with more potential to rehabilitate—despite the severity of the offense"—than offenders of sections 288.3 and 288.4. (*Legg, supra*, 81 Cal.App.5th at p. 515.)

*Legg*—which considered an equal protection claim comparing section 288(a) with a different offense mandating lifetime sex offender registration—is instructive. There, the defendant was convicted of committing a lewd act on a child who was 14 or 15 years old and at least 10 years younger than the defendant (§ 288, subd. (c)(1) (section 288(c)(1)), a conviction which required him to register as a sex offender for life. (*Legg, supra*, 81 Cal.App.5th at pp. 509–510.) The court reasoned that the concern leading to the enactment of section 288(c)(1)—sexual exploitation of young, vulnerable children by significantly older, predatory adults—was not always present when someone violates section 288(a), which does not contain an age differential requirement between the victim and offender. (*Legg*, at p. 515.)

The *Legg* court's rationale is applicable here notwithstanding that sections 288.3 and 288.4 do not contain an age differential requirement as in section 288(c)(1). The predatory nature of sections 288.3 and 288.4 offenses and the risk of reoffending can be compared to section 288(c)(1), all of which require lifetime registration. In enacting the tiered registry system, the Legislature relied on "decades of research" which had provided "a much better sense of who is at high risk of reoffending and who is not." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 384 (2017-2018 Reg. Sess.) as amended Sept. 8, 2017, p. 12.) When enacting the tiered registry system, the Legislature could reasonably have concluded that offenders of sections 288.3 and 288.4 warranted lifetime registration while

offenders of section 288(a) warranted a minimum term registration and the opportunity to petition to terminate registration.

Thus, the disparate treatment at issue bears a rational relationship to a governmental purpose. There is a rational relationship to the purpose of the tiered registry system—focusing resources and attention on offenders at the highest risk to reoffend—and to the purpose of sections 288.3 and 288.4, offenses which were created due to concerns about sex offenders, including predatory adults using the Internet to lure children for sex.

In attempting to demonstrate there is no conceivable basis for the different registration requirements, Andorfer advances a single argument. He compares the punishment for violations of sections 288.3 and 288.4 with a section 288(a) violation. He reasons that his convictions carry less potential prison time than a section 288(a) conviction but subject him to lifetime registration, while a section 288(a) offender is subject to a 20-year minimum registration period and may seek termination from the registry. (§§ 288.3, subd. (a), 288.4, subd. (b), 288(a), 290, subd . (d)(2)(A), (d)(3)(A), 290.5, subd. (a)(1).) This, he contends, is not rational.

In support of this argument, Andorfer relies on *D.M. v. Department of Justice* (2012) 209 Cal.App.4th 1439 (*D.M.*). There, a division of this court held that disparate treatment in obtaining relief from sex offender registration was a denial of equal protection. (*Id*. at p. 1443.) *D.M.* considered a statutory disparity between people convicted of unlawful oral copulation with a minor and people convicted of unlawful sexual intercourse with a minor. (*Ibid*.) Upon a court issuing a certificate of rehabilitation, the latter group were automatically relieved from any further duty to register as a sex offender, while the former were not. (*Id*. at p. 1449.) In comparing the incarceration periods for the two offenses, *D.M.* reasoned that "more severe

9

treatment of those convicted of the lesser offense"—oral copulation—was unjustified. (*Id.* at p. 1451.) It continued, the "length of the potential prison term presumably corresponds to the severity of the offense. It is irrational—indeed, perverse—and constitutionally impermissible, to impose stricter registration requirements on those subject to a shorter prison term than those subject to a longer term." (*Ibid.*)

In this court's view, *D.M.* does not assist Andorfer for the following reasons. First, the *D.M.* court based its holding on *People v. Hofsheier* (2006) 37 Cal.4th 1185, which has since been overruled. (*D.M., supra,* 209 Cal.App.4th at p. 1443; *Johnson, supra,* 60 Cal.4th at p. 888 [overruling *Hofsheier*].) Secondly, the Supreme Court not only overruled *Hofsheier,* but it also specifically disapproved of Court of Appeal decisions applying its rationale. *(Johnson,* at p. 888*.)* Further, the Court acknowledged that the *Hofsheier* court attempted to "limit its holding to the factual circumstances before it . . . ." (*Id.* at p. 878) Thus, the application of *Hofsheier* was not intended to reach beyond its narrow set of facts. Even still, Andorfer contends the analysis and reasoning he relies upon from *D.M.* was not disturbed by the California Supreme Court's overturning of *Hofsheier.* However, even considering Andorfer's assertion that the above quoted language from *D.M.* remains authority, his reasoning ignores the different purposes of imprisonment and sex offender registration. Registration is intended to " 'promote the " 'state interest in controlling crime and preventing recidivism in sex offenders.' " ' " (*Johnson,* at p. 881.) It is not punishment. Whereas the object of punishment is to exact retribution for past misconduct and deter future transgressions, sex offender registration provides for the collection of information about the identity and whereabouts of convicted sex offenders, making it harder for such people to reoffend without getting

caught. (*In re Alva* (2004) 33 Cal.4th 254, 287–288.) In fact, the purpose of establishing a tiered registry system was to differentiate offenders based on risk and focus resources and attention on high-risk offenders. (See *Franco, supra*, 99 Cal.App.5th at p. 191.) Specifically, "[p]lacement into Tier 1 and Tier 2 turns on the crime of which the defendant 'was convicted.' [Citation] Placement into Tier 3 generally turns on the crime of which the defendant 'was convicted,' but can also turn on the defendant's 'risk level . . .' [and] on his recidivism . . . ." (*Ibid.*) Focusing solely on comparing the potential prison terms for the offenses—and thus on the "severity of the offense"—ignores this purpose.

Andorfer's reliance on *Newland v. Board of Governors* (1977) 19 Cal.3d 705 is also misplaced. There, the California Supreme Court determined there was no rational basis for allowing felons—but not misdemeanants—to obtain a certificate of rehabilitation. (*Id.* at p. 712.) "The requirements invalidated in *Newland*—for which the Attorney General never tried to offer a rational basis, and which [the Supreme Court] described as so illogical that the nature of their operation appeared inadvertent—were not as minimally rational as" the lifetime registration mandates for offenders of sections 288.3 and 288.4. (*People v. Chatman* (2018) 4 Cal.5th 277, 296.)

Given a plausible basis exists for the disparate treatment between offenders of sections 288.3 and 288.4 and offenders of section 288(a), Andorfer's equal protection claim fails.

## III. DISPOSITION

The judgment is affirmed.

11

LANGHORNE WILSON, J.

WE CONCUR:

HUMES, P. J.

BANKE, J.

A165770
*People v. Andorfer*