Filed 12/1/23  P. v. Martinez CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>FRANCISCO JAVIER MARTINEZ,<br><br>    Defendant and Appellant. | B321009<br><br>(Los Angeles County Super. Ct. No. VA156076) |

APPEAL from an order of the Superior Court of Los Angeles County, Joseph R. Porras, Judge.  Affirmed.

Emry J. Allen, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill, Supervising Deputy Attorney General, and Eric J. Kohm, Deputy Attorney General, for Plaintiff and Respondent.

Defendant and appellant Francisco Javier Martinez (defendant) was convicted of attempting to meet with a minor for the purpose of engaging in lewd or lascivious behavior. The trial court sentenced him to two years in prison. In this appeal from the criminal judgment, we consider challenges to the sufficiency of the evidence, to asserted instructional errors concerning an element of the crime and the defense of entrapment, and to the trial court's decision to admit evidence of defendant's age. We also decide whether the trial court abused its discretion in denying defendant's request for probation and sentencing him to prison.

## I. BACKGROUND

### A. The Offense Conduct

In June 2021, Deputy Lizbeth Martinez created a profile on "Skout," a social media site that requires a user to be 18 or older in order to create an account.[1] Deputy Martinez used the name "Alejandra" and indicated she was 18 years old. She uploaded pictures of herself that had been edited with a filter to make her appear younger.

At around 9:00 a.m. on June 2, 2021, defendant, who was using a profile with the name Carlos Contreras, sent a message to "Alejandra." Defendant's first message read, "Fuck your sexy as hell, I'm working tonight in my tow truck but fuck id loved to eat you out bomb as fuck tonight in it [sic]. It's always been a

---

[1] At the time, Deputy Martinez was working on the Los Angeles Regional Human Trafficking Task Force, which used undercover operations to combat human trafficking and to target individuals seeking to have sex with underage girls.

2

fantasy I've had, wish you'd be down this morning. . . ."[2] Defendant sent the same message again that same hour.

Deputy Martinez, continuing to pose as "Alejandra," responded within the hour and wrote, "umm im in school lol." Defendant then asked "Alejandra" where she goes to school and if they could meet after school; he also offered to meet her somewhere nearby. "Alejandra" said she was attending Rancho High School and taking online classes. She also said she was on vacation the following Friday. Defendant replied that he too was on vacation the following Friday, and he offered to get them a room for Friday night. "Alejandra" asked defendant if he wanted to text (rather than communicating via Skout). Defendant asked for her phone number, and she provided it to him.

Defendant sent "Alejandra" a text message shortly before 11:00 a.m. They continued to exchange a few more messages, and defendant requested a photo of "Alejandra," which she declined to send at the time. At around 11:41 a.m., "Alejandra" said, "the truth im 15 and i have not been ate out lol." In response, defendant asked if she wanted to "get ate out" and if she could meet him after he finished work at 10 p.m. "Alejandra" responded that was too late because her mom wouldn't let her. After discussing other logistics about potentially meeting in person, defendant said, "I'd love to be your first" and suggested the orgasm would be so good she would want to "hmu [hit me up] everytime."

The two continued to text over the course of the day, with defendant twice more asking "Alejandra" if she could meet him

---

[2] Deputy Martinez explained at trial that "eat you out" was slang for oral sex.

3

that day.  "Alejandra" declined and explained she had to come up with a lie so she could go out first.

At around 8:00 p.m., "Alejandra" called defendant to tell him she couldn't see him that night, and to verify he was a real person.[3]  During the call, "Alejandra" said she didn't want her mom to ground her or take her phone away.  She also said she was nervous because she hadn't received oral sex before and repeated, as she had told defendant via text, that she was "only 15."  Defendant asked if she'd had sex before, and she replied, "No.  I'm only 15."  "Alejandra" asked how old defendant was, and he said he was 30.  Defendant offered to get them a room, but he also said they could do it in the truck.  After discussing logistics further, "Alejandra" told defendant she didn't want to get pregnant.  Defendant responded he didn't want her to get pregnant either.  "Alejandra" then said she would ask her mom.  As they ended the call, defendant asked her to send him some pictures.

After the phone call ended, defendant and "Alejandra" continued texting.  Defendant asked "Alejandra" whether her statement that she didn't want to get pregnant meant she also wanted to have sex with him.  "Alejandra" responded that she didn't know, but she also said she didn't want it to hurt.  Defendant said he would go slow, but it would hurt a bit the first time.  Defendant also said he wanted to "be the first for everything [she] experience[d] sexually" and wanted her to experience "every position" with him.

---

[3]      The call was recorded, and the recording was played at defendant's later criminal trial.

4

The two continued to text about their potential sexual encounter into the late evening. Defendant and "Alejandra" exchanged photos. Defendant asked "Alejandra" if he could see her vagina. Defendant then told "Alejandra" that if there was no chance she would see him the next day, he wouldn't get a room. "Alejandra" said she didn't think so, and she was going to ask her mom the next day. They said goodnight and stopped texting around 10:11 p.m.

The next day, "Alejandra" sent defendant a "good morning" text message around 10:00 a.m. Defendant responded approximately two hours later, and "Alejandra" told him she had asked her mom if she could go do homework with a friend after class and her mom said yes. Defendant said he would get a room. "Alejandra" said she would be ready at around 2:30 p.m., and the two agreed to meet near an El Pollo Loco. At around 2:13 p.m., defendant sent a message saying, "Well everything is set. Fuck I hope you['re] not just playing with me or a cop playing hero." "Alejandra" denied being a cop and said she didn't want any problems or to get into trouble.

At 2:30 p.m. defendant sent "Alejandra" a text message asking how long it would be until she arrived. She told him it would be about 15 minutes. The two continued corresponding via text until 2:51 p.m., at which point "Alejandra" said she was talking to her mom and would call him.

Defendant, who was sitting in a car parked near the El Pollo Loco, was then detained by law enforcement officers. Detective Sinuhe Villegas of the Los Angeles County Sheriff's Department, arrived as defendant was being removed from his vehicle. Detective Villegas looked inside the vehicle and saw

5

condoms in the driver's side door and two cell phones—one on the dashboard and another in the rear cargo area.

Deputy Martinez (who had been posing as "Alejandra") arrived at the El Pollo Loco while defendant was being detained. When Deputy Martinez called the number she had been texting as "Alejandra," one of the cell phones in defendant's vehicle started ringing and the screen displayed the caller as "Alexandra Sexy 18." Officers arrested defendant and he admitted his name was Francisco Martinez (not Carlos Contreras, the name he used on Skout) and he was 42 years old.

### B. Trial, Including Defendant's Motion to Exclude Reference to His Actual Age and His Testimony During the Defense Case

The Los Angeles County District Attorney charged defendant with a single count of violating Penal Code section 288.4, subdivision (b).[4] At trial on the charge, but before the jury was empaneled, defendant asked the court to exclude any reference to his actual age. Defendant argued that under Evidence Code sections 350 and 352, the evidence was neither

---

[4] The statute makes it a crime for a "person who, motivated by an unnatural or abnormal sexual interest in children, arranges a meeting with a minor or a person he or she believes to be a minor for the purpose of exposing his or her genitals or pubic or rectal area, having the child expose his or her genitals or pubic or rectal area, or engaging in lewd or lascivious behavior"; the statute also provides for increased punishment for a person "who goes to the arranged meeting place at or about the arranged time."

Undesignated statutory references that follow are to the Penal Code.

relevant nor probative and the discrepancy between defendant's age and "Alejandra's" age would cause the jury to be prejudiced against him.  The trial court ruled the evidence was relevant and explained it did not see the prejudice in admitting evidence of defendant's actual age.  The trial court also said the defendant was not entitled to have the jury believe he was 30 years old when that was not true.

After trial was underway, the prosecution presented evidence to establish the offense conduct we have already described.  Defendant testified in his own defense during the defense case (he was the only defense witness).

Defendant admitted he was using Skout to find a sexual partner.  He believed the people he was messaging were adults because only people 18 years old and over were allowed to create an account.  He claimed that when he messaged "Alejandra" he believed she was 18 or older.  When "Alejandra" stated she was 15 years old, relayed that she was in high school, and said she needed permission from her mom to get out of the house, defendant did not question her because he thought she was role playing and her fantasy was being underage.  Defendant was concerned that if he questioned her about the fantasy or role-playing, he would ruin it.[5]  Defendant denied having fantasies about having sex with a high schooler, having sex with a virgin, or having sex with somebody for their first time.

---

[5]     A prosecution witness testified at trial that Skout is not advertised as a fantasy type of website, and is not advertised as a place to go to role-play.  There are other, specific websites and chatrooms used to role-play fantasies and fetishes.

*C. Jury Instructions, Verdict, and Sentencing*

After the presentation of evidence, the trial court instructed the jury with the parties' agreed-upon version of CALCRIM No. 1126. In relevant part, the instruction provided: "The defendant is charged in Count 1 with going to a meeting with a minor for a lewd purpose in violation of Penal Code section 288.4(b). [¶] To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant arranged a meeting with a person he believed to be a minor; [¶] 2. When the defendant did so, he was motivated by an unnatural or abnormal sexual interest in children; [¶] 3. At that meeting, the defendant intended to expose his genitals or pubic or rectal area, or have the minor expose her genitals or pubic or rectal area, or engage in lewd or lascivious behavior; [¶] AND [¶] 4. The defendant went to the arranged meeting place at or about the arranged time."

Defendant made no request for an instruction to clarify any of the elements of the section 288.4, subdivision (b) offense. Nor did he request an instruction on the defense of entrapment.

The jury convicted defendant on the single charge against him. As described in more detail *post*, the trial court declined defendant's request for a probationary sentence and instead imposed a low-term sentence of two years in state prison.

## II. DISCUSSION

Defendant's several assignments of error are all unpersuasive. Substantial evidence supports the jury's finding that defendant was motivated by an abnormal or unnatural interest in children: he continued to proposition "Alejandra" after she repeatedly told him she was "only 15," and his messages and statements (particularly those appearing excited at the prospect

8

of being her "first") established a substantial motivating factor for his sexual interest in her was her status as a minor. The trial court did not have a sua sponte duty to further explain for the jury the "motivated by an unnatural or abnormal sexual interest in children" element of the offense because the language of the CALCRIM pattern instruction was adequate. The trial court did not have a duty to instruct on the defense of entrapment because defendant did not rely on the defense and there was no substantial evidence supporting it. There is no basis in the appellate record to hold trial counsel was constitutionally ineffective in not requesting either instruction (i.e., to clarify "motivated by" or to explain entrapment) because there could be satisfactory explanations for the decision not to make such a request. Defendant forfeited any objection to the admission of evidence of his actual age on the ground he now argues—namely, that it was improper character evidence. And finally, the trial court did not abuse its discretion by declining to sentence defendant to probation instead of prison.

    *A.    Substantial Evidence Supports the Verdict*

Section 288.4 requires, among other things, proof that a person charged with violating the statute was "motivated by an unnatural or abnormal sexual interest in children." Precedent elaborates that "section 288.4 requires that the prohibited motivation be a substantial factor in the commission of the prohibited act." (*People v. Fromuth* (2016) 2 Cal.App.5th 91, 103.) ""The substantial factor standard is a relatively broad one, requiring only that the contribution of the individual cause be more than negligible or theoretical." [Citation.] Thus, "a force which plays only an 'infinitesimal' or 'theoretical' part in bringing

about injury, damage, or loss is not a substantial factor" [citation], but a very minor force that does cause harm is a substantial factor [citation].' [Citation.]" (*Id.* at 105.)

Substantial evidence supports the jury's finding on the "motivated by" element of the offense in this case. (*People v. Westerfield* (2019) 6 Cal.5th 632, 713 [on substantial evidence review, we look at the record in the light most favorable to the judgment and decide whether there is evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt].) Although "Alejandra's" Skout profile indicated she was 18 years old, she informed defendant she was only 15 years old within just a few hours of defendant's first message to her. Then, when "Alejandra" informed defendant she had not experienced oral sex before, defendant stated he wanted to be her "first." When the two spoke on the phone the next day, "Alejandra" mentioned that she was 15 years old three more times. Again, rather than ceasing to contact her, defendant persisted in pursuing a sexual encounter and again stated he wanted to "be the first for everything" that "Alejandra" experienced sexually. More generally, defendant's messages to "Alejandra" were explicitly focused on his interest in a sexual encounter with her and they did not engage in any significant communication on any other topic. The jury could have reasonably concluded from these communications between the two that defendant's belief that "Alejandra" was a minor was a substantial factor in his continued interest in pursuing her and not just a "negligible or theoretical" factor.

In arguing to the contrary, defendant emphasizes his testimony that he was seeking a sexual encounter with an adult

10

female when he logged onto Skout and he believed "Alejandra" was an adult when they began communicating. He asserts that he was already infatuated with the adult "Alejandra" after their brief communications before she disclosed that she was 15 years old. At best, however, this suggests defendant's *initial* response to "Alejandra" may not have been motivated by an unnatural or abnormal sexual interest in children (though this does not grapple with the evidence that a filter was used on "Alejandra's" profile picture to make her appear younger). Defendant's subsequent actions after learning "Alejandra's" age, however, do reflect that abnormal interest, and nothing in the statute precluded the jury from relying on that evidence to find her status as a minor was a substantial motivating factor (or from inferring that "Alejandra's" young age was defendant's motivation all along).[6] (*Fromuth, supra,* 2 Cal.App.5th at 104-105.)

---

[6]     Defendant cites two cases in which a defendant who solicited sexual contact or responded to a request for sexual contact was found to be substantially motivated by the minor's age, noting that in those cases the defendant had not initially been informed the minor was an adult. (*Fromuth, supra,* 2 Cal.App.5th at 96; *People v. Reed* (1996) 53 Cal.App.4th 389, 393.) Neither of these cases, though, indicates the initial absence of information about the minor's age had any impact on the verdict—and we do not believe it would.

B.    *The Trial Court Was Not Obligated to Give a Clarifying "Substantial Factor" Instruction Sua Sponte, Nor Was It Obligated to Instruct on Entrapment*

1.    *Substantial factor*

"In criminal cases, even absent a request, the trial court must instruct on general principles of law relevant to the issues raised by the evidence." (*People v. Koontz* (2002) 27 Cal.4th 1041, 1085.)  Defendant argues the trial court erred by failing to sua sponte instruct the jury that an unnatural or abnormal sexual interest in children must be a "substantial factor" motivating a defendant's behavior in arranging a meeting with a minor in violation of section 288.4, subdivision (b).  He contends a "substantial factor" instruction was required both because it was a principle of law necessary to the jury's decision and because it is, "as a practical matter," an element of the charged offense.

The question of whether a trial court has a sua sponte duty to give such a "substantial factor" instruction to a jury considering a section 288.4, subdivision (b) charge was addressed in *Fromuth*.  (*Fromuth, supra*, 2 Cal.App.5th at 106.)  There, as here, the defendant argued the court erred by not explaining to the jury that "motivated by" meant "an unnatural or abnormal sexual interest in children" was a substantial factor (i.e., a more than trivial or remote factor) in the commission of the proscribed conduct.  (*Id*. at 108.)  While the *Fromuth* court agreed the motivation must be a substantial factor, it disagreed the trial court was required to provide a specific instruction on this issue.  (*Id*. at 103, 109.)  The *Fromuth* court observed the instruction the trial court delivered used the language of the statute, and explained statutory language """is generally an appropriate and

12

desirable basis for an instruction . . . . [provided] the jury would have no difficulty in understanding the statute without guidance . . . ."''" (*Id*. at 108.) The court concluded that "[b]ecause 'motivated by' is a commonly understood phrase that is naturally understood to require causation, a lay jury would readily understand that the 'motivated by' element required that the motivation be a cause of defendant's conduct." (*Id*. at 109.) Accordingly, "[s]ince defendant did not request a substantial factor instruction and the court had no sua sponte duty to give such an instruction, the trial court did not err in failing to so instruct the jury." (*Ibid*.)

We agree with the reasoning in *Fromuth*, which fully applies here. The only contrary authority defendant cites is *People v. Villanueva* (2008) 169 Cal.App.4th 41, which he relies on for the proposition that a trial court must instruct a jury sua sponte on principles of law applicable to a case. While this is true as a general matter, it does not establish the trial court was required to issue an additional instruction sua sponte here.[7]

### 2. Entrapment

A trial court must instruct on "an affirmative defense[,] . . . even in the absence of a request, 'if it appears the defendant is relying on such a defense, or if there is a substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case.'" (*People v. Boyer* (2006) 38 Cal.4th 412, 468-469.)

---

[7] Insofar as defendant asserts the "substantial factor" requirement is an element of the section 288.4, subdivision (b) offense, the assertion is incorrect.

13

"In California, the test for entrapment focuses on the police conduct and is objective. Entrapment is established if the law enforcement conduct is likely to induce a normally law-abiding person to commit the offense. [Citation.] '[S]uch a person would normally resist the temptation to commit a crime presented by the simple opportunity to act unlawfully. Official conduct that does no more than offer that opportunity to the suspect—for example, a decoy program—is therefore permissible; but it is impermissible for the police or their agents to pressure the suspect by overbearing conduct such as badgering, cajoling, importuning, or other affirmative acts likely to induce a normally law-abiding person to commit the crime.' [Citation.]" (*People v. Watson* (2000) 22 Cal.4th 220, 222-223.)

There are two guiding principles for determining if law enforcement conduct is likely to induce a normally law-abiding person to commit an offense. "First, if the actions of the law enforcement agent would generate in a normally law-abiding person a motive for the crime other than ordinary criminal intent, entrapment will be established. An example of such conduct would be an appeal by the police that would induce such a person to commit the act because of friendship or sympathy, instead of a desire for personal gain or other typical criminal purpose. Second, affirmative police conduct that would make commission of the crime unusually attractive to a normally law-abiding person will likewise constitute entrapment. Such conduct would include, for example, a guarantee that the act is not illegal or the offense will go undetected, an offer of exorbitant consideration, or any similar enticement." (*People v. Barraza* (1979) 23 Cal.3d 675, 690.)

14

Substantial evidence would not have warranted an entrapment instruction in this case. The record demonstrates a scant three hours passed between the first message defendant sent "Alejandra" on Skout and the text message in which Deputy Martinez revealed that "Alejandra" was 15 years old. The majority of the communication between Deputy Martinez and defendant centered around defendant describing the acts he wanted to perform to or with "Alejandra" and the logistics of their potential meeting. Deputy Martinez asked clarifying questions about some of the sexual contact defendant mentioned and asked about the size of his penis. Nothing, however, indicates Deputy Martinez made the crime unusually attractive, induced defendant to act out of friendship or sympathy, or badgered or cajoled defendant. And, since Deputy Martinez was undercover as "Alejandra," she made no assertions regarding the legality of the crime or defendant's likelihood of being detected.

Deputy Martinez's conduct would not have induced a normally law-abiding person to arrange to have sex with a 15-year-old girl. Her conduct did nothing more than present defendant with the opportunity to commit the offense. "[A] person who arranges to have sex with a child when given the opportunity is an opportunistic sexual predator, not a normally law-abiding person."[8] (*Fromuth*, *supra*, 2 Cal.App.5th at 111.)

---

[8] Defendant contends that because there was no evidence he had a pre-existing sexual interest in minors, criminal intent was planted in his mind by law enforcement. He suggests that the period during which he was in contact with "Alejandra" before he learned her true age created that intent. He also argues that "Alejandra's" suggestion that they communicate via text rather than via Skout encouraged and strengthened his infatuation with her. Contrary to defendant's arguments, none of these actions

15

Additionally, there was no indication defendant was attempting to rely on an entrapment defense at trial. Defendant's testimony was solely aimed at another defense: his claimed belief that "Alejandra" was an adult engaging in a fantasy of being a 15-year-old. Defendant's opening and closing statements likewise focused solely on that defense.

### 3. Asserted ineffective assistance of counsel for not requesting either instruction

"When challenging a conviction on grounds of ineffective assistance, the defendant must demonstrate counsel's inadequacy. To satisfy this burden, the defendant must first show counsel's performance was deficient, in that it fell below an objective standard of reasonableness under prevailing professional norms. Second, the defendant must show resulting prejudice, i.e., a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different . . . . On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.)

---

are of the sort that would give rise to criminal intent in a normally law abiding citizen. Deputy Martinez, as "Alejandra," responded to defendant's messages and suggested they use an alternate method of communication. She "did not use any enticing or overbearing language" in doing so. (*Fromuth*, *supra*, 2 Cal.App.5th at 111.)

The record in this case does not affirmatively disclose defendant's trial attorney had no rational tactical purpose for declining to request instructions explaining "substantial factor" or entrapment. There is also no indication in the record that defendant's attorney was asked and refused to explain why he did not request such instructions. Defendant therefore can only establish deficient performance by counsel if there could be no satisfactory explanation for not requesting the instructions. As we now explain, the contrary is true.

As to the "substantial factor" instruction, the trial court instructed the jury on general principles of law, including the elements of the crime with which defendant was charged. Defendant's trial attorney could reasonably have concluded the instruction on the elements of section 288.4, which correctly stated the law, was adequate to address the issue of defendant's motivation. Indeed, given that a "substantial factor" is merely one that is more than trivial or remote, counsel could have concluded that requesting a clarifying instruction would have actually been detrimental and closed off otherwise available avenues for argument. (*Fromuth*, *supra*, 2 Cal.App.5th at 109, fn. 13 ["We note that a substantial factor instruction appears to offer no potential benefit to a defendant. The plain meaning of the 'motivated by' instruction given by the court required the jury to find that the conduct was caused by the motivation. A substantial factor instruction would have told the jury that the motivation needed to be only a more than trivial factor in causing the conduct. Such an instruction would appear to benefit the prosecution rather than the defense"].)

As for entrapment, defendant did not present an entrapment defense at trial and there was no evidence to support

17

such an instruction.  Ineffective assistance of counsel is not shown by the absence of a request for an instruction that would have been groundless.  (*People v. Cunningham* (2001) 25 Cal.4th 926, 1037-1038 [no ineffective assistance where counsel did not seek an instruction to which the defendant was not entitled]; *People v. Givan* (2015) 233 Cal.App.4th 335, 351, fn. 4; cf. *People v. Bradley* (2012) 208 Cal.App.4th 64, 90 ["Failure to raise a meritless objection is not ineffective assistance of counsel"].)

> C.    *The Trial Court Did Not Err by Admitting Evidence of Defendant's Actual Age*

Defendant argues the trial court erred by admitting evidence of his actual age (42 years old) when he represented himself to "Alejandra" as being younger (30 years old).  Defendant contends his age was a character trait within the meaning of Evidence Code section 1101, subdivision (b) and was used to present him in a negative light based on a stereotype of his character.

Although defendant objected to the admission of this evidence below, he objected only under Evidence Code sections 350 and 352, arguing it was prejudicial and not probative.  Defendant thus forfeited the objection under Evidence Code section 1101 because he did not assert the testimony was inadmissible character evidence.  (Evid. Code, § 353, subd. (a); *People v. Valdez* (2012) 55 Cal.4th 82, 130 [objections to gang-related evidence on other grounds were "insufficient to preserve for appeal the claim that the evidence was inadmissible under Evidence Code section 1101, subdivision (a)"]; *People v. Doolin* (2009) 45 Cal.4th 390, 437 [trial objection that evidence "was irrelevant and unduly prejudicial under Evidence Code section

18

352" was insufficient to preserve for appeal claim under section 1101 of the Evidence Code].)

Defendant's opening brief does at one point state, however, that the risk of undue prejudice from the admission of his actual age was great while any probative value was nonexistent because it was factually irrelevant. Charitably reading this as a challenge to the trial court's Evidence Code section 352 ruling, that challenge still fails.

The evidence of defendant's actual age was relevant to the case: defendant's mendacity about his age was relevant to his credibility. It was also relevant to his understanding that someone using Skout could misrepresent their age—and therefore relevant to his assertion that he relied on "Alejandra's" age on her Skout profile. The evidence of defendant's actual age also was not outweighed by undue prejudice. The fact that defendant was a 42-year-old man seeking to meet a 15-year-old girl for sex rather than a 30-year-old man doing the same was not likely to "'evoke an [appreciably different] emotional bias against the defendant as an individual.'" (*People v. Karis* (1988) 46 Cal.3d 612, 638.) We therefore hold the trial court's Evidence Code section 352 ruling was not an abuse of discretion. (*People v. Williams* (1997) 16 Cal.4th 153, 213 [deferential abuse of discretion review applies to evidentiary rulings.)

D.    *The Trial Court Did Not Abuse Its Discretion in Declining to Sentence Defendant to Probation*

1.    *Additional background*

Defendant's pre-conviction probation report revealed defendant had a prior felony conviction from the state of Oklahoma in January 2006 for possession of a controlled

19

substance with intent to sell. He was sentenced to ten years state supervision, with four years in prison and six years suspended. He also had prior misdemeanor convictions for driving on a suspended license.

As a circumstance in aggravation, the probation office concluded the manner in which the crime in this case was carried out indicated planning, sophistication, or professionalism. As a circumstance in mitigation, the probation office stated defendant had an insignificant record of criminal conduct, considering the recency and frequency of prior crimes.

The probation office opined in pertinent part as follows: "The defendant's actions were without regard for the age of the victim, the victim's wellbeing[,] or the consequences for himself. Although the defendant does not have a significant criminal background, it does not negate the severity of his criminal behavior. Due to the significance of the crime, the undersigned deputy respectfully recommends the defendant be sentenced to state prison."

At the sentencing hearing, defendant requested the court sentence him to probation rather than prison. Defendant argued his criminal record was insignificant and he had performed satisfactorily on supervision following his conviction in Oklahoma. Defendant also argued there was "some willing participation" by the ostensible victim in this case. Finally, defendant represented he grew up without a father figure in his life because both his biological father and his mother's subsequent partner abandoned the family by the time he was four years old. Defendant's mother worked constantly to provide for her children, leaving defendant and his sibling with insufficient supervision.

The trial court declined to impose a probationary sentence. The court stated defendant's behavior in the case was predatory behavior of the sort that children do not see coming. The court also stated this was not an offense of the type where it wanted to put defendant on probation and hope for the best. Instead, the court viewed defendant's sentence as punishment meant to keep him off the street for a period of time. The court did acknowledge, though, that defendant's prior conviction for a drug-related offense in 2006 tended to lean toward being a factor in mitigation because defendant had only one felony conviction in 15 years. The court determined the low term of two years in prison was appropriate in light of the mitigating factors and defendant's lack of prior offenses of this type.

### 2. *Analysis*

"Probation is generally reserved for convicted criminals whose conditional release into society poses minimal risk to public safety and promotes rehabilitation." (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1120.) The Rules of Court enumerate criteria affecting the decision of whether to grant probation and divide them between facts relating to the crime and facts relating to the defendant. (Cal. Rules of Court, rule 4.414.)

Facts regarding the crime include the seriousness and circumstances of the crime, the vulnerability of the victim, whether the defendant was an active participant, and whether the crime was committed because of an unusual circumstance that is unlikely to recur. (Cal. Rules of Court, rule 4.414(a).) Facts regarding the defendant include any prior record of criminal conduct, whether the defendant is remorseful, and the likelihood that the defendant will be a danger to others if not

21

imprisoned.  (Cal. Rules of Court, rule 4.414(b).)  A trial court is also permitted to consider factors not listed in rule 4.414 so long as those factors are reasonably related to the decision.  (Cal. Rules of Court, rule 4.408(a).)

"A trial court has broad discretion in determining whether or not to grant probation.  In reviewing that determination it is not our function to substitute our judgment for that of the trial court.  Our function is to determine whether the trial court's order granting probation is arbitrary or capricious or exceeds the bounds of reason considering all the facts and circumstances." (*People v. Superior Court (Du)* (1992) 5 Cal.App.4th 822, 825.) The considerations respecting discretionary sentencing choices that are identified in the Rules of Court "will be deemed to have been considered unless the record affirmatively reflects otherwise."  (Cal. Rules of Court, rule 4.409.)

The trial court's decision to deny defendant probation—a decision that was explained by the court at some length during the sentencing hearing and that is consistent with the recommendation of the probation office—is supported by the record and not an abuse of discretion.  "Alejandra's" age established she was vulnerable.  Her communications with defendant underscored her vulnerability and naivete. Defendant's actions required planning, as he attempted to arrange a meeting with "Alejandra" over the course of two days. Defendant was an active participant in the crime, as he repeatedly asked "Alejandra" if she was available to meet with him so they could engage in sexual conduct either in his truck or in a hotel room.  In light of all the facts, the trial court considered

defendant's behavior "predatory," and this was well within the bounds of reason.[9]

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

BAKER, J.

We concur:

RUBIN, P. J.

MOOR, J.

---

[9] Defendant asserts the trial court abused its discretion because it did not cite a single aggravating factor in making its decision. A trial court, however, is permitted—but not required—to consider factors in aggravation. (Cal. Rules of Court Rule 4.414(c).) Moreover, though the court did not recount factors in aggravation on the record, the probation officer's report did identify a factor in aggravation.